NO. 15-15858

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re: GOOGLE REFERRER HEADER PRIVACY LITIGATION

PALOMA GAOS, *et al.*,
*Plaintiffs-Appellees*,

THEODORE H. FRANK and MELISSA ANN HOLYOAK,
*Objectors-Appellants*,

v.

GOOGLE, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California at San Jose
No. 5:10-cv-04809-EJD, District Judge Edward J. Davila

Opening Brief of Appellants Theodore H. Frank and Melissa Holyoak

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Adam Ezra Schulman
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*Attorneys for Objectors-Appellants*

# Table of Contents

Table of Contents ............................................................................................. i

Table of Authorities ...................................................................................... iii

Statutes and Rules ......................................................................................... xii

Statement of Subject Matter and Appellate Jurisdiction .......................... 1

Statement of the Issues .................................................................................. 1

Standard of Review ........................................................................................ 3

Statement of the Case .................................................................................... 3

    A.    Plaintiffs sue over Google search. ............................................... 3

    B.    The parties settle. ........................................................................ 4

    C.    The *cy pres* recipients. ................................................................ 5

    D.    Theodore H. Frank and Melissa Holyoak object. ................... 6

    E.    The district court approves the Settlement. ............................. 9

Summary of Argument ................................................................................. 10

Preliminary Statement ................................................................................. 16

Argument ....................................................................................................... 17

I.    As this Court has recognized, *cy pres* is rife with conflicts of interest and requires narrow cabining. ................................................. 17

II.    The district court erred in approving a *cy pres*-only settlement. ........................... 22

    A.    The district court erred in permitting *cy pres* when it was feasible to make payments to the class. ................................... 22

    B.    In the alternative, if it is impossible to create a settlement with "distributable" funds, Rule 23(b)(3) certification was an error of law .................................................................... 28

III.    Even if *cy pres* were appropriate, the defendant's and class counsel's "significant prior affiliation" with the *cy pres* recipients made settlement approval legal error. ................................ 32

IV.    Even if the settlement could be legally approved, it is inappropriate to use the 25% benchmark for a *cy pres*-only settlement fund. ........................ 39

Conclusion.................................................................................................... 42

Statement of Related Cases  Under Circuit Rule 28-2.6.................................. 44

Certificate of Compliance  with Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1 ........ 45

Certificate of Service ...................................................................................... 46

# Table of Authorities

<u>Cases</u>

*Abdullah v. U.S. Sec. Assocs.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................... 3

*In re Apple Inc. Sec. Litig.*,
  No. 5:06-cv-05208-JF,
  2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ...............................35-36

*In re Apple Iphone/Ipod Warranty Litig.*,
  No. C 10-1610 RS,
  2014 U.S. Dist. LEXIS 52050 (N.D. Cal. Apr. 14, 2014) ..............................41-42

*In re Aqua Dots Prod. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ................................................................. 29

*In re Baby Products Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ......................... 3, 13-14, 18, 21, 24-28, 37, 39-40, 42

*In re BankAmerica Corp. Sec. Litig.*,
  775 F.3d 1060 (8th Cir. 2015) ................................... 1, 10-13, 17-18, 21-24, 28, 41

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ................................................................. 30

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
  No. 09-md-2023,
  2013 U.S. Dist. LEXIS 125555 (E.D.N.Y. Sep. 3, 2013) .................................... 27

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...................................................13, 22, 24, 31, 37, 39

*Brown v. Wells Fargo & Co.*,
  No. 11-1362 (JRT/JJG),
  2013 U.S. Dist. LEXIS 181262 (D. Minn. Dec. 30, 2013) ................................. 29

*Castano v. American Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ...............................................................31-32

*In re Chase Bank USA NA "Check Loan" Contract Litig.*,
  No. 09-md-02032 (N.D. Cal.) ................................................................ 20

*In re Classmates.com Consol. Litig.*,
    No. 09-cv-0045-RAJ,
    2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012)................................ 16

*Crawford v. Astrue*,
    586 F.3d 1142 (9th Cir. 2009) ................................................................................ 3

*Daniels v. Aeropostale West*,
    No. C 12-05755 WHA,
    2014 U.S. Dist. LEXIS 74081 (N.D. Cal. May 29, 2014)................................... 30

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012)..........................2, 3, 7, 10, 13, 20, 26, 33, 38, 40, 42

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ...................................................................................................... 1

*Diamond Chemical Co. v. Akzo Nobel Chemicals BV*,
    517 F. Supp. 2d 212 (D.D.C. 2007) ...................................................................... 20

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ................................................................ 13, 34, 39, 41

*E. & J. Gallo Winery v. EnCana Corp.*,
    503 F.3d 1027 (9th Cir. 2007)............................................................................... 31

*In re EasySaver Rewards Litig.*,
    921 F. Supp. 2d 1040 (S.D. Cal. 2013),
    *reversed and vacated*, 599 Fed. Appx. 274 (9th Cir. 2015)............................34, 36, 38

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ................................................................................. 35

*Fraley v. Facebook*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013),
    *appeal pending*, No. 13-16819 (9th Cir.) ......................................7-9, 12, 22-23, 26-27

*Fraley v. Facebook*,
    2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)................................. 22

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. Jun. 2, 2011)........................................................5-6

*In re Heartland Payment Sys., Inc.,*
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................. 40

*In re Hotel Tel. Charges,*
    500 F.2d 86 (9th Cir. 1974) ............................................2, 16, 28-29, 31

*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir. 2013) .............................................................. 42

*In re Hydroxycut Mktg. and Sales Practices Litig.,*
    No. 09-md-2087 BTM (KSC),
    2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) .............................. 38

*Ira Holtzman, C.P.A. & Assocs. v. Turza,*
    728 F.3d 682 (7th Cir. 2013) ...........................................17-19, 21-22, 24

*Jackson v. Phillips,*
    96 Mass. 539 (1867) ........................................................................... 17

*Kamm v. California City Development Co.,*
    509 F.2d 205 (9th Cir. 1975) ............................................................... 30

*Klier v. Elf Atochem N.A., Inc.,*
    658 F.3d 468 (5th Cir. 2011) ....................................... 1, 11-14, 21-23, 28

*Kline v. Coldwell, Banker & Co.,*
    508 F.2d 226 (9th Cir. 1974) ............................................................... 30

*Lane v. Facebook,*
    696 F.3d 811 (9th Cir. 2012) .......................... 9-10, 13-14, 21, 23, 27-28, 33-34, 38

*Lane v. Page,*
    862 F. Supp. 2d 1182 (D.N.M. 2012) .................................................... 35

*In re Linerboard Antitrust Litig.,*
    MDL No. 1261,
    2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008)................................. 35

*In re Livingsocial Mktg. & Sales Practice Litig.,*
    298 F.R.D. 1 (D.D.C. 2013) ................................................................. 40

*In re Lupron Mkt'g & Sales Practices Litig.,*
   677 F.3d 21 (1st Cir. 2012) ...................................................................... 21

*Marek v. Lane,*
   134 S.Ct. 8 (2013) ............................................................................ 11, 17

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) ................................................................. 21

*McDonough v. Toys 'R' Us,*
   No. 06-cv-00242 (E.D. Pa.) .............................................................. 26-27

*In re Microsoft Corp. Antitrust Litig.,*
   185 F. Supp. 2d 519 (D. Md. 2002) ...................................................... 20

*Mirfasihi v. Fleet Mortgage Corp.,*
   356 F.3d 781 (7th Cir. 2004) ............................................................. 17-18

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ........................................................ 22, 27-28

*Murray v. GMAC Mortg. Corp.,*
   434 F.3d 948 (7th Cir. 2006) ................................................................ 31

*Nachshin v. AOL, LLC,*
   663 F.3d 1034 (9th Cir. 2011)
   ............................................. 2, 3, 7, 11, 13, 17-19, 21, 31, 32, 34-35, 40, 42

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014)
   ...................................... 1, 3, 11, 13-14, 16-18, 22-23, 26-28, 34, 37, 40-41

*Pearson v. Target Corp.,*
   No. 1:11-cv-07972 (N.D. Ill.) ................................................................ 27

*Perry v. FleetBoston Fin. Corp.,*
   229 F.R.D. 105 (E.D. Pa. 2005) .......................................................... 40

*In re Pet Foods Prod. Liab. Litig.,*
   629 F.3d 333 (3d Cir. 2010) ................................................................. 14

*Radcliffe v. Experian Info. Solutions,*
   715 F.3d 1157 (9th Cir. 2013) ..................................................... 2, 33, 42

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................................ 41

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ................................................................ 38

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir. 1985) .............................................................. 13

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    362 F. Supp. 2d 574 (E.D. Pa. 2005) .................................................... 35

*SEC v. Bear, Stearns & Co. Inc.*,
    626 F. Supp. 2d 402 (S.D.N.Y. 2009) ....................................... 20, 32, 35

*Smith v. Clark County Sch. Dist.*,
    727 F.3d 950 (9th Cir. 2013) .................................................................. 3

*Sonmore v. CheckRite Recovery Servs.*,
    206 F.R.D. 257 (D. Minn. 2011) ...................................................... 29-30

*In re Southwest Airlines Voucher Litig.*,
    No. 13-3264, -- F.3d --,
    2014 U.S. App. LEXIS 14601 (7th Cir. Aug. 20, 2015) ...................... 39

*Supler v. FKAACS, Inc.*,
    No. 5-11-CV-00229-FL, 2012 U.S. Dist. LEXIS 159210 (E.D.N.C. Nov.
    6, 2012) ................................................................................................. 29

*In re Thornburg Mortg., Inc. Secs. Litig.*,
    885 F. Supp. 2d 1097 (D.N.M. 2012) ............................................. 14, 35

*United States v. Kimsey*,
    668 F.3d 691 (9th Cir. 2012) ................................................................ 13

*Weeks v. Kellogg Co.*,
    No. CV 09-08102 (MMM) (RZx),
    2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .................. 40

*Zimmerman v. Oregon Dep't. of Justice*,
    170 F.3d 1169 (9th Cir. 1999) ......................................................... 14, 28

Rules and Statutes

18 U.S.C. § 2520 ............................................................................................ 29

18 U.S.C. § 2701 .............................................................................................. 1

18 U.S.C. § 2702 .............................................................................................. 1

28 U.S.C. § 1291 .............................................................................................. 1

28 U.S.C. § 1331 .............................................................................................. 1

28 U.S.C. § 1367 .............................................................................................. 1

Fed. R. App. Proc. 4(a)(1)(A) ......................................................................... 1

Fed. R. Civ. Proc. 23 ....................................................................................... 1

Fed. R. Civ. Proc. 23(a)(4) ............................................................................ 29

Fed. R. Civ. Proc. 23(b)(3) ............................................... 2, 7, 15-16, 28-32

Fed. R. Civ. Proc. 23(e) ...................................................................15, 31, 37

Fed. R. Civ. Proc. 23(h) ................................................................................... 7

Fed. R. Civ. Proc. 58 ....................................................................................... 1

Other Authorities

Angwin, Julia and Robert Faturechi,
    *Stanford Promises Not to Use Google Money for Privacy Research*,
    PROPUBLICA (Sep. 23, 2014), available at
    http://www.propublica.org/article/stanford-promises-not-to-use-
    google-money-for-privacy-research ......................................................... 5

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ..................... 37

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07 (2010)
    .................................................... 1-2, 7-9, 11-14, 16, 21-23, 25, 27-28, 32-33, 37, 42

AMERICAN LAW INSTITUTE,
PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07(a) (2010) ...................... 1

AMERICAN LAW INSTITUTE,
PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07 *comment* (b) (2010)
.................................................................................. 2, 12, 18, 22, 32-33, 39

AMERICAN LAW INSTITUTE,
PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13 (2010) ......................... 40

BEISNER, JOHN, *et al.*,
CY PRES: A NOT SO CHARITABLE CONTRIBUTION TO CLASS ACTION
PRACTICE (2010) ....................................................................... 11

Bronstad, Amanda,
*Cy pres awards under scrutiny,*
NAT'L L. J. (Aug. 11, 2008) ........................................................ 11

Carney, Tim,
*Wealthy AARP: One of the Country's Most Powerful Lobbies,*
HUMAN EVENTS (Mar. 25, 2010) ................................................. 6

Chasin, Chris J.,
*Modernizing Class Action Cy Pres Through Democratic Inputs,*
163 U. PENN. L. REV. 1463 (2015) ............................................ 35, 41

Fisher, Daniel,
*Odds of a Payoff in Consumer Class Action? Less Than a Straight Flush,*
FORBES.COM, May 8, 2014 ....................................................... 23

Frank, Theodore H.,
Statement before the House Judiciary Committee
Subcommittee on the Constitution and Civil Justice,
*Examination of Litigation Abuse* (Mar. 13, 2013) .......................... 11, 17, 18, 20, 41

Frank, Theodore H.,
*Cy Pres Settlements,*
CLASS ACTION WATCH (March 2008) ........................................ 18

Frankel, Allison,
  *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant*
  *& Eisenhofer to Modify Apples Securities Class Action Deal,*
  AMERICAN LAWYER LIT. DAILY, November 30, 2010 .................................35-36

Hechinger, John and Rebecca Buckman,
  *The Golden Touch of Stanford's President,*
  WALL ST. J. (Feb. 25, 2007) ........................................................................ 5

Jones, Ashby,
  *A Litigator Fights Class-Action Suits,*
  WALL ST. J. (Oct. 31, 2011) ...................................................................... 16

Koppel, Nathan,
  *Proposed Facebook Settlement Comes Under Fire*
  WALL ST. J (Mar. 2, 2010) ........................................................................ 11

Krueger, George & Judd Serotta,
  Op-Ed, *Our Class-Action System is Unconstitutional,*
  WALL ST. J., Aug. 6, 2008 ......................................................................... 35

Levie, Shay,
  *Reverse Sampling:*
  *Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions,*
  79 GEO. WASH. L. REV. 1065 (2011) ...................................................... 24

Liptak, Adam,
  *When Lawyers Cut Their Clients Out of the Deal,*
  N.Y. TIMES (Aug. 13, 2013) ............................................................... 11, 16

Liptak, Adam,
  *Doling Out Other People's Money,*
  N.Y. TIMES (Nov. 26, 2007) ..................................................11, 17, 19-20, 32, 35

MacLean, Pamela A.,
  *Competing for Leftovers,*
  CALIFORNIA LAWYER 15 (Sept. 2011) ................................................... 20

Parloff, Roger,
  *Google and Facebook's new tactic in the tech wars,*
  FORTUNE (Jul. 30, 2012)..........................................................5-6, 19-20

Redish, Martin H. *et al.*,
 *Cy Pres Relief & the Pathologies of the Modern Class Action:*
 *A Normative and Empirical Analysis*,
 62 FLA. L. REV. 617 (2010)....................................................11, 14-15, 17-18, 20-21

Rosenblatt, Joel,
 *Google Accord with Harvard Tie Fails Smell Test*,
 BLOOMBERGBUSINESS (Aug. 29, 2014) ..................................................... 9

Roy, Avik,
 *How the AARP Made $2.8 Billion By Supporting Obamacare's Cuts to Medicare*,
 FORBES.COM (Sep. 22, 2012) .................................................................... 6

Silver, Charles,
 *Due Process And The Lodestar Method: You Can't Get There From Here*,
 74 TUL. L. REV. 1809 (2000) .................................................................. 42

Stanford Center for Internet and Society,
 *About Us,* http://cyberlaw.stanford.edu/about-us ............................................... 41

Toobin, Jeffrey,
 *The Solace of Oblivion*,
 THE NEW YORKER (Sep. 29, 2014) ......................................................... 5

Wasserman, Rhonda,
 *Cy Pres in Class Action Settlements*,
 88 U.S.C. L. REV. 97 (2014) .............................................................. 19, 35

Winegarner, Beth,
 *Google's $8.5M Privacy Deal Fails 'Smell Test,' Judge Says*,
 LAW360 (Aug. 29, 2014) ...................................................................... 9

Yospe, Sam,
 *Cy Pres Distributions in Class Action Settlements*,
 2009 COLUMBIA BUS. L. REV. 1014....................................................... 11

**Statutes and Rules**

**Federal Rule of Civil Procedure 23. Class Actions.**

**(a)    Prerequisites.**

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

…

(4) the representative parties will fairly and adequately protect the interests of the class.

…

**(b)    Types of Class Actions.**

A class action may be maintained if Rule 23(a) is satisfied and if:

…

(3) the court finds that … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. …

…

**(e)    Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

…

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

…

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

…

**(g)    Class Counsel.**

…

(4) *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

**(h)    Attorney's Fees and Nontaxable Costs.**

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, direct to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

…

*Principles of the Law of Aggregate Litigation*, Section 3.07

A court may approve a settlement that proposes a *cy pres* remedy … The court must apply the following criteria in determining whether a *cy pres* award is appropriate:

(a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.

(b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

(c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a *cy pres* approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no

recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

## Statement of Subject Matter and Appellate Jurisdiction

The district court had federal question jurisdiction under 28 U.S.C. § 1331, because the complaint alleged violations of, *inter alia*, the Stored Communications Act, 18 U.S.C. §§ 2701 and 2702, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Dkt. 39 at 3, 35-37; ER5.

This court has appellate jurisdiction under 28 U.S.C. § 1291. The court's final judgment, pursuant to Fed. R. Civ. Proc. 58, issued on April 2, 2015. ER1. Objectors-Appellants Theodore H. Frank and Melissa Ann Holyoak filed a notice of appeal on April 27, 2015. ER24. This notice is timely under Fed. R. App. Proc. 4(a)(1)(A). Appellants, as class members who objected to settlement approval below, have standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

## Statement of the Issues

1.　　The Fifth, Seventh, and Eighth Circuits hold that a *cy pres* distribution is "supposed to be limited to money that can't feasibly be awarded" to the class. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014) (Posner, J.) (rejecting $1.1 million *cy pres* residual in class with over 10 million members); *Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011); *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1063-66 (8th Cir. 2015); *accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07(a) (2010) ("*ALI Principles*"). Did the district court err as a matter of law when it failed to apply § 3.07 and approved a class action settlement that

consisted solely of *cy pres* distribution of millions of dollars when similar settlements in this Circuit have successfully distributed similar sums to similarly-sized classes through a claims process?

2.   In the alternative, this Court holds that "Whenever the principal, if not the only, beneficiaries to the class action are…not the individual class members," Rule 23(b)(3)'s superiority requirement is not met, and a class should not be certified. *In re Hotel Tel. Charges*, 500 F.2d 86, 91-92 (9th Cir. 1974). If it is true that any distribution to the class was not feasible, did the district court err as a matter of law in certifying the class?

3.   "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* § 3.07 *comment (b)*. *Accord Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) (criticizing *cy pres* where "the selection process may answer to the whims and self interests of the parties [or] their counsel," singling out as an example "[l]awyers…distributing [*cy pres* to] alma maters and the like" (internal citation omitted)); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (disapproving *cy pres* where a defendant might be using "previously budgeted funds" to make the sort of donations it has long made); *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) ("appearance of divided loyalties of counsel" by itself impermissible). Did the district court err as a matter of law when it failed to apply § 3.07 and approved a *cy pres* distribution that paid money to three of class counsel's *alma maters* and at least five organizations with previously budgeted donations from Google?

4. The Third and Seventh Circuits hold that attorneys' fees should be reduced when class counsel prioritizes *cy pres* over direct recovery to the class. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3rd Cir. 2013); *Pearson*, 772 F.3d at 781. Did the district court err by treating a $8.5 million *cy pres*-only settlement as worth $8.5 million to the class for purposes of calculating the 25% attorneys' fees benchmark?

## Standard of Review

"We review a district court's approval of a proposed class action settlement, including a proposed *cy pres* settlement distribution, for abuse of discretion." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). An error of law is a *per se* abuse of discretion. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 956 (9th Cir. 2013). Ignoring controlling precedent is a clear error of law. *See Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). A district court abuses its discretion if it "rests its decision on a clearly erroneous finding of fact." *Crawford v. Astrue*, 586 F.3d 1142, 1147 (9th Cir. 2009). "To survive appellate review" of a settlement approval, "the district court must show it has explored comprehensively all factors and must give a reasoned response to all non-frivolous objections." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012).

## Statement of the Case

### A. Plaintiffs sue over Google search.

Plaintiffs brought a putative class action in the Northern District of California in 2010, alleging that Google operated its search engine in a manner that violated their Internet privacy rights by disclosing personal information, such as the search terms they

used, to third parties; this, they claimed, violated the federal Stored Communications Act and various rights under state law, and plaintiffs demanded statutory and punitive damages and an injunction. ER4-5; Dkt. 1. After the district court granted two motions to dismiss with leave to amend and after two amended complaints, Google moved to dismiss the second amended complaint (Dkt. 29) in 2012, but the court mooted the motion in 2013 after consolidating the case for settlement purposes with a similar later-filed action. ER137; Dkt. 24, 38, 44, 51.

## B.     The parties settle.

The parties settled. Dkt. 52; ER149-173 ("Settlement"). Google would establish an $8.5 million fund, but none of that money would go to class members. Rather, after attorneys' fees and costs, incentive awards of up to $5,000 to named plaintiffs, and up to $1 million administration costs paid to the claims administrator, the remainder of the fund would be divided proportionately among *cy pres* recipients who agree to devote funds to protecting privacy on the Internet. ER156 (Settlement § 3). The parties proposed the MacArthur Foundation; World Privacy Forum; Carnegie-Mellon; Chicago-Kent College of Law Center for Information, Society and Policy; Berkman Center for Internet and Society at Harvard University; Stanford Center for Internet and Society; and AARP, Inc. as the *cy pres* recipients. ER142.[1] Google's only other obligation was to "maintain information on its website under the FAQs to advise search users of its conduct and policies so that users can make an informed choice about whether and how to use" Google. *Id.* The district court granted preliminary approval of the

---

[1] The MacArthur Foundation refused to be named as a recipient. ER142.

settlement after plaintiffs' counsel represented that the proposed *cy pres* recipients were "independent and free from conflict." ER145-ER148. Class counsel requested $2.15 million in fees and expenses, uncontested by Google. ER10. The fee request was solely based on the $8.5 million size of the settlement fund; class counsel made no claim that the injunction entitled them to fees. Dkt. 66 at 2.

**C.    The *cy pres* recipients.**

Stanford graduates Larry Page and Sergey Brin famously founded Google, and Stanford received hundreds of millions of dollars of Google stock as payment for allowing Google to use technology Page and Brin developed while at Stanford. Julia Angwin and Robert Faturechi, *Stanford Promises Not to Use Google Money for Privacy Research*, PROPUBLICA (Sep. 23, 2014), available at http://www.propublica.org/article/stanford-promises-not-to-use-google-money-for-privacy-research (last accessed August 31, 2015). Google has provided millions of dollars of funding for the Stanford Center for Internet and Society at Stanford Law School, which supported Google's positions on liberalizing copyright law, and whose scholars have otherwise publicly spoken in support of Google's litigation positions, including on privacy issues. ER114-ER115; *e.g.,* John Hechinger and Rebecca Buckman, *The Golden Touch of Stanford's President*, WALL ST. J. (Feb. 25, 2007); Jeffrey Toobin, *The Solace of Oblivion*, THE NEW YORKER (Sep. 29, 2014). In some years, the majority of the Stanford Center's funding has come from Google. Roger Parloff, *Google and Facebook's new tactic in the tech wars*, FORTUNE (Jul. 30, 2012) (noting criticism in *Google Buzz* case that *cy pres* is steered to organizations that are currently paid by Google to lobby for or to consult for the company).

Class counsel Michael Aschenbrener is an alumnus of Chicago-Kent College of Law. ER113. Class counsel Kassra Powell Nassri is an alumnus of Stanford and Harvard. *Id.*

The AARP takes a variety of controversial political positions. ER132; *e.g.*, Avik Roy, *How the AARP Made $2.8 Billion By Supporting Obamacare's Cuts to Medicare*, FORBES.COM (Sep. 22, 2012), available at http://www.forbes.com/sites/aroy/2012/09/22/the-aarps-2-8-billion-reasons-for-supporting-obamacares-cuts-to-medicare/ (last accessed Aug. 31, 2015); Tim Carney, *Wealthy AARP: One of the Country's Most Powerful Lobbies*, Human Events (Mar. 25, 2010).

At least three of the six *cy pres* recipients—the Berkman Center, Stanford Center, and Carnegie-Mellon—previously received Google *cy pres* money. *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *3 (N.D. Cal. Jun. 2, 2011); Parloff, *supra* (noting conflict of interest with Stanford Center). Google is also a regular donor to the Berkman Center, the Stanford Center, AARP, and Chicago-Kent. ER114-ER115. It is possible that Google also already donates to the sixth recipient, World Privacy Forum, but that organization does not identify its corporate donors; Google never disclosed the full scope of its relationship with the recipients, despite the objectors' demand that the district court require such disclosure. ER115.

## D.    Theodore H. Frank and Melissa Holyoak object.

Class members Theodore H. Frank and Melissa Holyoak, among other class members, timely objected to the settlement approval, *cy pres* recipients, and fee request on August 8, 2014. ER98-ER134. They are attorneys at the non-profit Center for Class

Action Fairness. ER130-ER134. The Center has won millions of dollars for class members and shareholders and numerous landmark appellate decisions protecting class members' rights. ER133.

Frank argued that *cy pres* was inappropriate at all under the *ALI Principles* § 3.07: the $8.5 million was sufficient to fund either a claims process or a lottery distribution to identifiable class members, and thus improperly favored the third-party charities over the class members to whom class counsel owed a fiduciary obligation. ER107-ER112. The undisputed evidence was that claims rates were almost always less than one percent. ER110-ER111; ER34. In particular, the settlement for a similarly large class of over 100 million members in *Fraley v. Facebook, Inc.* was able to have a claims process after the district court rejected the possibility of a *cy pres*-only settlement, and was able to distribute $15 per class member because so few class members made claims. ER110 (citing 966 F. Supp. 2d 939 (N.D. Cal. 2013)); ER34. If it was really not feasible to distribute any money to class members, then Rule 23(b)(3) certification was inappropriate, because of the lack of superiority to other forms of adjudication: the release benefited only Google and the class was no better off than if there was no litigation at all. ER116-ER117; ER35-36.

Frank further objected that at least five of the *cy pres* recipients were tainted under *Nachshin* and *Dennis* because of their pre-existing relationships with class counsel and with Google, and thus not "independent and free from conflict"; the donations to Google's preexisting beneficiaries reflected "a change of accounting entries" and the creation of the "illusion of relief to justify the attorneys' fees." ER112-ER116; ER33; ER38-ER40. Frank particularly objected to the AARP receiving money in his name and

in the name of other class members who disagreed with AARP's public-policy positions and lobbying. ER116; ER132.

Finally, Frank objected to the proposed $2.125 million fee request. The request was based on a 25% benchmark, but that presupposed that an $8.5 million fund going entirely to third parties with nothing to the class was equal in value in class benefit to $8.5 million paid to the class. ER117-ER121. This assumption was especially unfounded given the extraordinary $1 million set aside for administrative costs in a case where there would be neither a claims process nor individual notice. ER133-ER134; ER121-ER123. Frank didn't object to the idea of Google settling its claims for $2.1 million in real "benefit," and didn't claim that the settlement necessarily needed to settle for more money, but objected that the attorneys would obtain the entirety of that $2.1 million benefit. ER36-ER40.

Class counsel defended the right of attorneys to direct money to their *alma maters* instead of to class members. Dkt. 75 at 5. Their only authority for this proposition was a district-court decision that the Ninth Circuit has since vacated. *Id.* Class counsel made no attempt to defend the settlement under *ALI Principles* § 3.07; its response to Frank's objection did not even mention it. Dkt. 75. Though class counsel implicitly asserted that "individual payments were not practicable," they provided no reason why the *Fraley v. Facebook* claims procedure would not be successful in this case, and only mentioned *Fraley* to suggest that its preliminary-approval denial did not bind the district court. Dkt. 75 at 2, 17. Google filed no response to the objections and no data with the court identifying the scope of their prior relationships with any of the proposed beneficiaries.

### E.   The district court approves the Settlement.

At the fairness hearing (ER29), class counsel neither addressed § 3.07 nor the success of the *Fraley* claims process in preventing an all-*cy-pres* settlement; rather, they asserted that *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), gave them *carte blanche* to give money to whomever Google wanted. ER56-57. The district court was critical of the parties' conflicts of interest and "lack of transparency in the selection process" and said that "it doesn't pass the smell test." ER54-55. Multiple press accounts reported that the settlement "probably won't win approval." Joel Rosenblatt, *Google Accord with Harvard Tie Fails Judge's Smell Test*, BLOOMBERGBUSINESS (Aug. 29, 2014); Beth Winegarner, *Google's $8.5M Privacy Deal Fails 'Smell Test,' Judge Says*, LAW360 (Aug. 29, 2014).

Nevertheless, the district court overruled all objections and approved the settlement on March 31, 2015. ER4. It did not apply or mention *ALI Principles* § 3.07. It rejected Frank's argument that an all-*cy pres* settlement class could not be certified. ER7-ER8.

In evaluating objections, the district court asserted that objectors bear the burden of challenging a settlement, and held that the objectors did not meet that burden. ER21. It noted the "potential for a conflict of interest" relating to class counsel's *alma mater*, but went ahead and approved the beneficiary choice because "the identity of potential cy pres recipients was a negotiated term included in the Settlement Agreement and therefore not chosen solely by Harvard alumni." ER22. It only addressed the problem that the recipients were regular Google beneficiaries in passing, complaining that the recipients were the "usual suspects," but the district court apparently believed that *Lane*

*v. Facebook*'s standard of appellate review tied a district court's hands in deciding whether to exercise its discretion in approving a settlement, without citing or distinguishing the analysis in *Dennis v. Kellogg*. ER14-15.

The district court granted the full $2.125 million fee request, finding it an appropriate 25% benchmark of the $8.5 million settlement fund, but did not address Frank's arguments that the settlement should not be valued at $8.5 million other than to say "The court does not agree." ER17-ER20; ER22. Though the court based its lodestar cross-check on a 2.2 multiplier, its actual awards varied from a 0.0 multiplier to Edelson PC to a 3.27 multiplier to Nassiri & Jung LLP. ER2-ER3; ER19-ER20.

The court entered final judgment on April 2, 2015. ER1. The final judgment, including its allocation of the fee award amongst three law firms, was simply a dated signature of the proposed order, with the word "[PROPOSED]" crossed out. *Id*. This timely appeal followed. ER24.

## Summary of Argument

The district court approved a settlement that it said "failed the smell test" because it believed *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), tied its hands. But that decision does no such thing. This Court should reverse, and give guidance to lower courts that the fact that some *cy pres* settlements pass muster does not mean that anything goes.

"In recent years, federal district courts have disposed of unclaimed class action settlement funds after distributions to the class by making *cy pres* distributions. Such distributions have been controversial in the courts of appeals" with many circuits

"criticiz[ing] and severely restrict[ing] the practice." *BankAmerica*, 775 F.3d at 1063 (citing cases including *Nachshin*) (internal quotations and footnote omitted). *See generally* Martin H. Redish, Peter Julian & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010); JOHN BEISNER, et al., CY PRES: A NOT SO CHARITABLE CONTRIBUTION TO CLASS ACTION PRACTICE 13 (2010); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13, 2013); Nathan Koppel, *Proposed Facebook Settlement Comes Under Fire*, WALL ST. J. (Mar. 2, 2010); Adam Liptak, *Doling Out Other People's Money*, N.Y. TIMES (Nov. 26, 2007) ("*Doling Out*"); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUM. BUS. L. REV. 1014; Amanda Bronstad, *Cy pres awards under scrutiny*, NAT'L L. J. (Aug. 11, 2008); Theodore H. Frank, Statement before the House Judiciary Committee Subcommittee on the Constitution and Civil Justice, *Examination of Litigation Abuse* (Mar. 13, 2013) ("Frank Statement"). As the leading law review article notes, *cy pres* awards can "increase the likelihood and absolute amount of attorneys' fees awarded," "without directly, or even indirectly, benefitting the plaintiff." Redish, 62 FLA. L. REV. at 660-61. *Cy pres* "creates the illusion of class compensation." *Id.* at 623.

In *Marek v. Lane*, Chief Justice Roberts concurring in the denial of *certiorari* noted the possible need of the Supreme Court "to clarify the limits" of *cy pres* "including when, if ever, such relief, should be considered." 134 S.Ct. 8, 9 (2013) (citing Redish).

Since then, two appellate courts have taken the position endorsed by Section 3.07 of the *ALI Principles*: "A *cy pres* award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." *Pearson*, 772 F.3d at 784 (rejecting $1.13 million *cy pres* residual when distribution

possible to 4.7 million class members); *accord BankAmerica*, 775 F.3d at 1063-64 (rejecting *cy pres* of $2.7 million residual in lieu of third distribution to class members) (explicitly adopting *ALI Principles* § 3.07); *Klier*, 658 F.3d at 475.

This settlement presents a scenario even more pernicious than the much-criticized distribution of an oversized residual: class counsel skipped over any attempt to provide benefit to the class and simply spent the settlement money on third parties—though no party presented any evidence in the record that the analogous *Fraley v. Facebook* claims process could not have been used here. Rather, the district court simply held that the Ninth Circuit and district courts have approved other all-*cy-pres* settlements and class members effectively had no right to complain about the parties' choice of compromise. ER13-15; ER22. This is the wrong standard of law, bad public policy, and would create a pointless circuit split.

Even if *cy pres* rather than class distribution were appropriate, it is indisputably the case that the *cy pres* in this settlement did not comply with Section 3.07. "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* § 3.07 *comment* (b). Google is affiliated with *at least* five of the recipients; class counsel has "significant prior affiliations" with *at least* three of the recipients. Again, the district court erred as a matter of law in failing to consider § 3.07; its justification was that *cy pres* recipients need not be "ideal" and that "the identity of potential *cy pres* recipients was a negotiated term included in the Settlement Agreement and therefore not chosen solely by Harvard alumni." ER19. That is, to put it lightly, a *non sequitur* and error of law: all *cy pres*

agreements consist of negotiated terms, and nothing about a negotiation prevents class counsel from self-dealing at the class's expense. *Nachshin*, 663 F.3d at 1040 (courts owe no deference to "the parties' freely-negotiated settlement"); *In re Bluetooth Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013) (arm's-length negotiations do nothing to protect class from misallocation between class counsel and class); *Pearson*, 772 F.3d at 787 (same).

This Court has criticized "paper tiger" *cy pres* relief. *Dennis*, 697 F.3d at 868. That Google changed the accounting entries for the distribution of charitable money that it regularly gives to these *cy pres* beneficiaries does not create a class benefit. Moreover, the district court's decision to ignore obvious conflicts of interest means that class counsel is being doubly compensated at the class's expense: once when class counsel gets to take credit for presenting a check of their clients' money to their *alma mater*, and a second time when they collect a commission in attorneys' fees of a multiplier of lodestar for doing so. This is wrong, and this Court should make that clear.

The divided panel in *Lane v. Facebook* signed off on an all-*cy-pres* settlement, but the appellants there focused on the *cy pres* selection process and the adequacy of the settlement, and "concede[d] that direct monetary payments to the class of remaining settlement funds would be infeasible." *Id.* at 821. Frank makes no such concession here. "[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *United States v. Kimsey*, 668 F.3d 691, 699 (9th Cir. 2012) (internal quotations omitted); *see also Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) (citing cases). *Lane* did not consider § 3.07 or *Klier*, and did not have the benefit of *BankAmerica Corp.*, *Pearson*, or *Baby Products*.

Lower courts like the one here are using *Lane* to rubber-stamp abusive *cy pres* proposals, when *Lane* did not consider the arguments Frank raises here, and merely rejected the hypothetical arguments appellants raised in that particular settlement before a single ultimate beneficiary was selected. *Lane* does not preclude this Court from adopting § 3.07 and reversing this abusive *cy pres* settlement; to the extent anyone contends otherwise, *Lane* creates a circuit split and this Court should overrule it to reconcile the Ninth Circuit's *cy pres* policy with that of its sister circuits. *Zimmerman v. Oregon Dep't. of Justice*, 170 F. 3d 1169, 1184 (9th Cir. 1999) (Court will only create a circuit split upon "painstaking inquiry"). The bare legitimacy of *cy pres* in the class-action context is controvertible with good reason. *See Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 480-82 (5th Cir. 2011) (Jones J., concurring); *In re Pet Foods Prod. Liab. Litig.*, 629 F.3d 333, 358 (3d Cir. 2010) (Weis, J., concurring and dissenting); Redish, *supra*; *In re Thornburg Mortg., Inc. Secs. Litig.*, 885 F. Supp. 2d 1097, 1105-12 (D.N.M. 2012) (collecting sources). *Cy pres* has been given a narrow berth in most circuits; for the foregoing reasons, sound public policy, binding Ninth Circuit decisions, and persuasive authority from other circuits requires that this particular application be rejected.

At a minimum, it is a misuse of the Ninth Circuit's 25% benchmark to treat *cy pres* as identical to direct distribution to the class. "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3rd Cir. 2013). The Seventh Circuit goes so far as to say that it is "obvious" that *cy pres* should not be considered a class benefit in determining attorneys' fees. *Pearson*, 772 F.3d at 781. Permitting class counsel to collect attorneys' fees based on unmoored *cy pres* awards

"threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's unlawful behavior." Redish, 62 FLA. L. REV. at 666. The Court should establish a rule that a dollar of *cy pres* is entitled to a smaller fee award—if any—than a dollar of direct benefit to the class.

This is especially true in this case where the *cy pres* recipients were existing Google beneficiaries and half of the *cy pres* money went to class counsel's *alma mater*. This was not really an "$8.5 million" settlement, but a $2.1 million settlement (payment to attorneys) with a change in accounting entries for another $6 million of Google money from its every-day charitable donations to a *cy pres* settlement fund. Perhaps the legal merits in this case were so feeble that this compromise was all that class counsel could accomplish; Frank does not contend that the parties cannot choose to settle for $2.1 million in real expense to Google as opposed to a much bigger number. But the district court has the responsibility to examine whether the *cy pres* relief is illusory without really changing Google's relationship with the class and, if so, reduce the attorney fees accordingly. Why is the class settling for nothing while some of the attorneys receive more than three times their lodestar as if they actually won the case?

One more issue: while this Court has held that all-*cy-pres* settlements can satisfy Rule 23(e)'s requirements, it has not recently addressed the issue of whether or when class certification is appropriate when class counsel takes the position that it is impossible to provide material relief to the class. One prerequisite of class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If a *cy pres*-only settlement is

necessary because it would be too costly to distribute the settlement funds to individual class members, then a class action is not an efficient and superior means of adjudicating this controversy. As this Court has said, "Whenever the principal, if not the only, beneficiaries to the class action are…not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute." *In re Hotel Tel. Charges*, 500 F.2d 86, 91-92 (9th Cir. 1974). If the parties insist that distribution to the class is impossible, then the class flunked Rule 23(b)(3) and should not have been certified. But if it is feasible as objectors demonstrated and appellees failed to contest, then a *cy pres*-only settlement violates § 3.07 and class counsel's fiduciary duty, and should not have been approved.

## Preliminary Statement

Attorneys with the non-profit public-interest law firm Center for Class Action Fairness bring this objection and appeal. The Center's mission is to litigate on behalf of class members against unfair class-action procedures and settlements, and it has won millions of dollars for class members. *See, e.g.,* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling Center attorney Frank "the leading critic of abusive class action settlements"); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011); *Pearson,* 772 F.3d at 787 (praising the Center's work); *In re Classmates.com Consol. Litig.,* No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (same). Frank has successfully argued some of the leading cases on policing *cy pres* abuse, and has testified before Congress

about the issue. *Nachshin*, 663 F.3d 1034; *BankAmerica*, 775 F.3d 1060; *Pearson*, 772 F.3d 778; Frank Statement.

This appeal is brought in good faith to protect class members in this and future settlements against abusive *cy pres*.

## Argument

### I.    As this Court has recognized, *cy pres* is rife with conflicts of interest and requires narrow cabining.

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *Nachshin,* 663 F.3d at 1038. The classic example of *cy pres* was a 19th-century case where a court repurposed a trust that had been created to abolish slavery in the United States to instead provide charity to poor African-Americans. *Jackson v. Phillips*, 96 Mass. 539 (1867).

Imported to the class action context, *cy pres* is a "misnomer—though one common in the legal literature." *Ira Holtzman, C.P.A. & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) ("*Turza*") (*citing Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) (Posner, J.)). Nevertheless, *cy pres* has quite recently become an increasingly popular method of distributing settlement funds to non-class third parties in lieu of class members. Redish, 62 FLA. L. REV. at 653, 661; *Marek*, 134 S.Ct. at 9. "Indeed, in many class actions it is solely the use of *cy pres* that assures distribution of a class settlement or award fund sufficiently large to guarantee substantial attorneys' fees

and to make the entire class proceeding seemingly worthwhile." Redish, 62 FLA. L. REV. at 621.

Still, non-compensatory *cy pres* distributions, disfavored among both courts and commentators alike, remain an inferior avenue of last resort. *See, e.g., BankAmerica,* 775 F.3d at 1063-66; *Pearson,* 772 F.3d at 784; *Turza,* 728 F.3d at 689; *Baby Prods.*, 708 F.3d at 173 ("*Cy pres* distributions imperfectly serve that purpose by substituting for that direct compensation an indirect benefit that is at best attenuated and at worse illusory. *Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class."); *Mirfasihi,* 356 F.3d at 784 ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *ALI Principles* § 3.07 *comment (b)* (rejecting position that "cy pres remedy is preferable to further distributions to class members"). *See generally* Redish, 62 FLA. L. REV. at 628; Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH 1 (March 2008); Frank Statement.

"[A] growing number of scholars and courts have observed, the cy pres doctrine…poses many nascent dangers to the fairness of the distribution process." *Nachshin,* 663 F.3d at 1038 (citing authorities). When *cy pres* distributions are unmoored from class recovery or *ex ante* legislative or judicial standards,

> the selection process may answer to the whims and self interests of the parties, their counsel, or the court. Moreover, the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety.

*Nachshin*, 663 F.3d at 1039 (citing authorities).

When the charitable distribution is related to the judge, or left entirely to the judge's discretion, the ethical problems and conflicts of interest multiply. Class action settlements require judicial approval: one can readily envision a scenario where a judge looks more favorably upon a settlement that provides money for a judge's preferred charity than one that does not. Even if a judge divorces herself from such considerations, the parties may still believe that it would increase the chances of settlement approval or a fee request to throw some money to a charity associated with a judge. Moreover, charities that know that a judge has discretionary funds to distribute can—and do—lobby judges to choose them, blurring the appropriate role of the judiciary. The "specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety." *Nachshin*, 663 F.3d at 1039 (citing authorities); Liptak, *Doling Out, supra* ("allowing judges to choose how to spend other people's money 'is not a true judicial function and can lead to abuses'" (quoting former federal judge David F. Levi)); *see also id.* (quoting Judge Levi as saying "judges felt that there was something unseemly about this system" where "groups would solicit [judges] for consideration as recipients of *cy pres* awards"); *Turza*, 728 F.3d at 689 (citing cases). In one notorious case in this circuit, a district court judge *sua sponte* nominated the university at which he lectured as a *cy pres* recipient. Rhonda Wasserman, *Cy Pres in Class Action Settlements*, 88 U.S.C. L. Rev. 97, 124-25 n. 119 (2014); Parloff, *supra*.

But the parties' unfettered selection of *cy pres* recipients can also cause problems. For example, a defendant could steer distributions to a favored charity with which it

already does business, or use the *cy pres* distribution to achieve business ends. *Dennis*, 697 F.3d at 867-68 (ruminating on these issues); *SEC v. Bear, Stearns & Co. Inc.*, 626 F. Supp. 2d 402, 415 (S.D.N.Y. 2009); Parloff, *supra*; Pamela A. MacLean, *Competing for Leftovers*, CALIFORNIA LAWYER 15 (Sept. 2011). In one infamous example, Microsoft sought to donate numerous licenses for Windows software to schools as part of an antitrust class action settlement, essentially using the *cy pres* as a marketing tool that would have frozen out its competitors. *In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519 (D. Md. 2002).

Conversely, if the *cy pres* distribution is related to plaintiffs' counsel, it would result in class counsel being double-compensated: the attorney indirectly benefits both from the *cy pres* distribution, and then makes a claim for attorneys' fees based upon the size of the *cy pres*. *Bear, Stearns,* 626 F. Supp. 2d at 415; *id.* (criticizing *Diamond Chemical Co. v. Akzo Nobel Chemicals BV*, 517 F. Supp. 2d 212 (D.D.C. 2007), where court failed to consider that sole recipient of large *cy pres* was class counsel's alma mater law school); Redish, 62 FLA. L. REV. at 661 (*cy pres* awards "can also increase the likelihood and absolute amount of attorneys' fees awarded without directly, or even indirectly, benefitting the plaintiff"); Liptak, *Doling Out, supra* ("Lawyers and judges have grown used to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like."). In another settlement where class counsel was already scheduled to receive $27 million, *cy pres* was designated to a charity run by class counsel's ex-wife; the conflict was never disclosed to the district court, which approved the settlement. Frank Statement 8 (*citing In re Chase Bank USA NA "Check Loan" Contract Litig.,* No. 09-md-02032 (N.D. Cal.)). Permitting class counsel to collect attorneys' fees

based on unmoored *cy pres* awards "threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's unlawful behavior." Redish, 62 FLA. L. REV. at 666. Likewise, a distribution to a charity affiliated with the named plaintiff can result in a windfall for the class representative and potentially compromise adequacy of representation. *E.g., Nachshin*, 663 F.3d at 1038 (named plaintiff worked for charity that she selected as *cy pres* recipient).

The American Law Institute has proposed standards in its *Principles of the Law of Aggregate Litigation* to prevent *cy pres* abuse. *ALI Principles* § 3.07. Numerous courts—including this one—have endorsed § 3.07 to a greater or lesser degree. *Nachshin*, 663 F.3d at 1039 n.2; *BankAmerica*, 775 F.3d at 1063-64; *Turza*, 728 F.3d at 689-90; *Klier*, 658 F.3d at 474-75 & nn. 14-16; *In re Lupron Mkt'g and Sales Practices Litig.*, 677 F.3d 21, 32-33 (1st Cir. 2012); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Baby Prods.*, 708 F.3d at 173 (agreeing in part). Given the confusion created by *Lane*, where neither the majority nor the dissent addressed § 3.07, this Court should join its sister circuits and endorse these standards explicitly. If so, there is no dispute that this settlement fails to comply with § 3.07, and that the district court's approval should be reversed.

**II.     The district court erred in approving a *cy pres*-only settlement.**

**A.     The district court erred in permitting *cy pres* when it was feasible to make payments to the class.**

*Cy pres* is, by definition, "next best." Thus, the *cy pres* "option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly." *Klier*, 658 F.3d at 475; *accord BankAmerica*, 775 F.3d at 1063-66; *Pearson*, 772 F.3d at 784; *Turza,* 728 F.3d at 689; *ALI Principles* § 3.07. This rule follows from the precept that "[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474; *accord ALI Principles* § 3.07 *comment* (b). In a pre-*ALI Principles* case, this Court implied the same rule. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (rejecting *cy pres* as an inadequate substitute for individual damages when "there is no evidence that proof of individual claims would be burdensome or that distribution of damages would be costly"). *See also Bluetooth*, 654 F.3d at 947 (reversing approval of *cy pres*-only settlement and noting that it is a sign of self-dealing when "the class receives no monetary distribution but class counsel is amply rewarded").

Here, there was no dispute that there was an analogous settlement in the Northern District of California, *Fraley v. Facebook, Inc.*, involving a gigantic class of over a hundred million class members and a settlement fund of less than $0.20/class member. The district court rejected a proposed *cy pres*-only settlement. "Merely pointing to the infeasibility of dividing up the agreed-to $10 million recovery … is insufficient … to justify resort to purely *cy pres* payments." 2012 U.S. Dist. LEXIS 116526, at *5 (N.D. Cal. Aug. 17, 2012). Instead, the settling parties were able to distribute millions

of dollars by creating a claims process that offered $10 to each claiming class member without coming close to exhausting a $20 million settlement fund. 966 F. Supp. 2d 939 (N.D. Cal. 2013). Indeed, there were so few claims that the parties responded to objections by increasing the payment to claimants to $15 without any risk of exhausting the settlement fund. *Id.* at 944. This is because claims rates in claims-made settlements are notoriously low, usually well under 1% for small-dollar amounts. *Pearson*, 772 F.3d at 782 (noting 0.25% claims rate in that case despite payments of over $28/class member); Daniel Fisher, *Odds of a Payoff in Consumer Class Action? Less Than a Straight Flush*, Forbes.com, May 8, 2014. available at http://www.forbes.com/sites/danielfisher/2014/05/08/odds-of-a-payoff-in-consumer-class-action-less-than-a-straight-flush (last accessed Sept. 2, 2015). ER110-11 (citing other authorities and cases). The parties here provided no evidence that a similar *pro rata* claims process paying $5 to $10 per claimant could not have distributed the $6 million or so in the settlement fund here to the class, and did not deny that a *Fraley* claims process would have been successful in this case. Rather, the settling parties simply asserted the right to choose *cy pres* over class members under *Lane*, without mentioning *Klier* or *ALI Principles* § 3.07. Dkt. 75 at 2-3.[2]

---

[2] Appeal of the *Fraley* settlement approval is scheduled for oral argument in this Court on September 17, 2015, with at least one appellant arguing that *Klier* required payments to class members to be augmented greater than $15 without any residual *cy pres*. *BankAmerica* would also require the same result. But even if the Ninth Circuit affirms the residual *cy pres* in *Fraley*, it should not control whether a settlement can forgo a feasible claims process entirely.

This is wrong. Class counsel has a fiduciary obligation to the class. *E.g., Bluetooth*, 654 F.3d at 946. Counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class." *Baby Prods.*, 708 F.3d at 178-79. Class counsel cannot choose to favor third-party non-class members over the class—even if those third parties are "worthy" charities (*BankAmerica*, 775 F.3d at 1065, 1067; *Turza*, 728 F.3d at 689), much less class counsel's *alma maters*. The conflicts of interest that *cy pres* awards can create are easily eliminated by restricting such awards to those narrow circumstances in which any pecuniary relief to the class is infeasible.[3] Class counsel may claim noble intent in wishing that settlement funds go to their *alma mater*, but class counsel should fulfill their good intentions with their own money, rather than that of their clients. Feasible compensation to class members legally trumps *cy pres* payments that do not directly benefit the class.

"Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Baby Prods.*, 708 F.3d at 174. If *cy pres* is an excessive share of the total relative to direct class recovery, a district court should consider whether to

---

[3] And there should be almost no circumstance in which distribution to the class is entirely infeasible. If nothing else, it is possible to compensate an oversized class with a small settlement fund by random lottery distribution. Shay Levie, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 GEO. WASH. L. REV. 1065 (2011). As arbitrary as that sounds, it is less arbitrary to distribute $6 million of settlement money to 60,000 or 600,000 class members than to zero class members and to third-party charities that happen to have been affiliated with class counsel and Google.

> urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

*Id.* What's true for a settlement of $3 million payments to the class and $18 million in *cy pres* is even more so for a settlement that pays $0 to the class and $6 million to *cy pres*.

The district court erred as a matter of law in holding that the $8.5 million settlement fund was "non-distributable" because the "amount of potential class members exceeds one hundred million individuals." ER14. But the legal question to be answered has never been "Is it feasible to make a distribution to every single member of the class?" The answer is almost always "No" for any settlement because, if nothing else, it is often administratively impossible to know who all of the class members are. Even in billion-dollar securities settlements where class members have suffered substantial losses, the parties do not know who each and every class member is and must rely upon class members to identify themselves and the size of their loss in a claims process. Even more so in consumer class actions involving small-dollar goods which depend solely upon the affirmations of self-identifying class members to distribute settlement funds that often are much smaller than $8.5 million. By the district court's standard, it would be permissible to sweep all of these settlements under the *cy pres* rug rather than make distributions to class members. Rather, the question under Section 3.07 is whether it is *possible* to identify class members to pay.

Under the correct legal standard, the district court erred in holding that the settlement fund was non-distributable. Indeed, the ratio in this case is not materially different than that in *Pearson*, which rejected a $1.1 million **residual** *cy pres* distribution in a class of over 12 million members, because it was possible to improve the claims process so that more than 0.25% of the class received money. 772 F.3d at 782, 784, 787. Moreover, the district court had no explanation why the *Fraley* process—also in a settlement with a class "exceed[ing] one hundred million individuals"—could not render this settlement "distributable"; it did not even mention *Fraley*, and the parties presented no record evidence contesting the feasibility of the *Fraley* process in this case. At a minimum, the finding that the fund is "non-distributable" is clearly erroneous and unsupported by any "reasoned response" rebutting Frank's objection and evidence about the ability of claims processes to limit the number of claimants, and must be reversed on that ground. *Dennis*, 697 F.3d at 864.

On appeal, the settling parties may argue for the first time what they did not argue below: that it would be too difficult to get money to class members. But *Fraley* isn't the only case that demonstrates that when courts insist that class members be compensated, settling parties suddenly discover resourcefulness they hadn't previously had. For example, in *Baby Products*, the settling parties unsuccessfully attempted to defend a settlement with a claims process that paid less than $3 million of its $35.5 million settlement fund to the class, where over $15 million would have gone to *cy pres*. 708 F.3d at 169-70. On remand, the restructured settlement identified hundreds of thousands of class members who could be issued checks so that there would no longer be a multi-million dollar remainder. *McDonough v. Toys 'R' Us,* No. 06-cv-00242, Motion

for Preliminary Approval of Settlement (Dkt. 847) (E.D. Pa. Dec. 18, 2013) (providing direct payments to class members whose contact information was available in the defendants' records). The remand of *Pearson* after the Seventh Circuit reversed settlement approval also resulted in a new settlement with millions of dollars of direct distribution to class members instead of $0.9 million in claims and $1.1 million in *cy pres*. *Pearson v. Target Corp.*, No. 1:11-cv-07972, Mem. in Support of Mot. For Preliminary Approval of Settlement (Dkt. 213) (N.D. Ill. May 14, 2015); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-md-2023, 2013 U.S. Dist. LEXIS 125555 (E.D.N.Y. Sep. 3, 2013) (parties voluntarily transformed *cy pres*/claims-made settlement to one providing millions of dollars of direct payments after Frank objected).

Google might protest that issuing $5 to $10 checks to individual claiming class members would have made this a different settlement, and that it would prefer to pay money to charity than to class members. If so, this just supports Frank's argument that the settlement was structured to create the *illusion* of relief rather than actual relief, and should not be considered more than a $2.1 million settlement with 100% of the benefit to the attorneys.

The district court seems to have incorrectly assumed that *Lane v. Facebook*— where there was no contention that distribution to the class was feasible and appellants instead challenged the size of the settlement fund and the choice of recipients— permitted *any cy pres*-only settlement, and reached that conclusion without mentioning § 3.07, *Baby Products*, or *Fraley*. ER15. But *Lane* does not overrule *Molski*, does not address whether courts should apply *ALI Principles* § 3.07, and does not authorize parties

to bypass feasible distribution to the class to instead benefit their favorite charities and *alma maters*.

By explicitly adopting the presumption in favor of class distributions, espoused by *ALI Principles* § 3.07 and *Molski*, this Court can help to cabin unfettered use of *cy pres* and again make class members the "foremost beneficiaries" of class settlements. *Baby Prods.*, 708 F.3d at 179. Any other result would contradict *Molski* and also create a circuit split with the Third, Fifth, Seventh, and Eighth Circuits. This Court will only create a circuit split upon "painstaking inquiry." *Zimmerman*, 170 F.3d at 1184. But neither the settling parties nor the district court provide any reason here to reject what other circuits have done, and neither does *Lane*. Settlement approval must be reversed.

## B. In the alternative, if it is impossible to create a settlement with "distributable" funds, Rule 23(b)(3) certification was an error of law.

One prerequisite of class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If a *cy pres*-only settlement is necessary because it would be too costly to distribute the settlement funds to individual class members, then a class action is not an efficient and superior means of adjudicating this controversy. The Ninth Circuit reached this conclusion in *In re Hotel Tel. Charges*, 500 F.2d 86 (9th Cir. 1974). The court reasoned: "Whenever the principal, if not the only, beneficiaries to the class action are…not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute. … When, as here, there is no realistic possibility that the class members will in fact receive compensation, then monolithic class actions raising mind-boggling manageability problems should be

rejected." *Id.* at 91-92. *Accord Supler v. FKAACS, Inc.*, No.. 5-11-CV-00229-FL, 2012 U.S. Dist. LEXIS 159210, at *10-*11 (E.D.N.C. Nov. 6, 2012) (holding that, because "benefits to putative class members" from *cy pres* payments "are attenuated and insignificant …, class certification does not … promote judicial efficiency") (internal quotations, ellipses, and citations omitted); *but cf. In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751-52 (7th Cir. 2011) (Easterbrook, J.) (rejecting superiority argument but agreeing that class cannot be certified when no incremental relief to class possible because such self-serving litigation violates Rule 23(a)(4)).

By the district court's reasoning, the proposed settlement falls into the *Hotel Tel. Charges* category. It provides at most an indirect and attenuated benefit to the class, justified on the grounds that individual distributions would be too costly because of the size of the class. ER14.

If true, then these claims should proceed as individual actions. Under such actions, class members can seek statutory damages of up to $10,000. 18 U.S.C. § 2520(c)(2)(B) (authorizing statutory damages for violations of the Electronic Communications Privacy Act). The expense of meritorious litigation should be no object, because the statute provides for a reasonable attorneys' fee. 18 U.S.C. § 2520(b)(3). No matter how slim the possibility of attaining such damages, that possibility is superior to releasing those claims for no compensation. *See Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262, at *16-*17 (D. Minn. Dec. 30, 2013) (concluding that superiority was not satisfied where individuals would be "entitled to between $100 and $1,000 dollars in statutory damages" in successful individual litigation, but only $55 as a class member); *Sonmore v. CheckRite*

*Recovery Servs.*, 206 F.R.D. 257, 265-66 (D. Minn. 2001) (holding that the discrepancy between the $25 that class members could recover and the $1000 in statutory damages they could recover individually meant that a class action was not superior); *cf. also Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 n.5 (9th Cir. 1974) (finding no superiority where individual recoveries could have amounted to $1,875 and attorneys' fees and costs were statutorily recoverable); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 716 (9th Cir. 2010) ("We think it clear that the Rule 23(b)(3) superiority analysis must be consistent with the congressional intent in enacting a particular statutory damages provision.").

Superiority must be contemplated from the perspective of putative absent class members, among other angles. *Bateman*, 623 F.3d at 713 (quoting *Kamm v. California City Development Co.*, 509 F.2d 205, 212 (9th Cir. 1975)). What is best for them? This settlement releases their rights in exchange for no compensatory relief. From the perspective of a class member, that cannot be a superior method of adjudicating this controversy. *Cf. Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014) ("No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars. The collective-action opt ins would be better off simply walking away from this lawsuit with their rights to sue still intact."). A *cy pres* settlement of statutory damages claims where individuals may recover attorneys' fees, in which many of the beneficiaries are already receiving donations from the defendant, is not superior in either fairness or efficiency to other methods of adjudication if class counsel are insufficiently confident enough to litigate the case beyond collecting a fee for themselves and their *alma maters*.

The district court rejected applying *Hotel Tel. Charges* because "the possibility of a cy pres distribution in place of direct payments to the class was not considered." ER8. This is a bald misreading of the case, which noted that the "appellees have argued that many of the individual questions arising from the damage claims can be solved by allowing damages in the form of fluid recovery," yet nevertheless held it inappropriate for class certification. 500 F.2d at 89-90.

True, as the district court noted, *Nachshin* dicta suggested that Rule 23(e) permitted *cy pres*-only settlements in some circumstances. ER8. But the appellant in *Nachshin* (represented by Frank) did not raise the Rule 23(b)(3) superiority issue raised here, a case where Congress has provided individual plaintiffs substantial incentive to proceed with individual actions to the extent they are meritorious. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having [been] so decided as to constitute precedents." *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1046 n.14 (9th Cir. 2007) (internal quotation omitted).

Just because "the class receives no monetary distribution but class counsel is amply rewarded" (*Bluetooth*, 654 F.3d at 947) does not mean that this suit raises small-dollar claims that require class litigation to be brought. It just means that either the deal is a "sellout" or that the suit has such a low "chance of success" that it should "be dismissed as frivolous and no one receive a penny." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.). "The most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case." *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (fact that

plaintiffs have incentive to bring meritorious individual suits is independent reason to reject class certification). If the district court is not clearly erroneous that this class action does not bring any hope of "distributable" sums, then Rule 23(b)(3)'s superiority requirement is not met for absent class members, and the district court erred as a matter of law in certifying the class for the sole purpose of releasing their claims without compensation.

## III. Even if *cy pres* were appropriate, the defendant's and class counsel's "significant prior affiliation" with the *cy pres* recipients made settlement approval legal error.

As discussed in the Frank objection and in the statement of the case, Google and class counsel had significant prior affiliations with most of the *cy pres* recipients. The district court found the "potential for a conflict of interest," but deferred to the wishes of the parties to steer the class's money to related charities on the grounds that the "identity of potential cy pres recipients was a negotiated term included in the Settlement Agreement and therefore not chosen solely by Harvard alumni" and that there is no requirement that "settling parties select a cy pres recipient that the court or class members would find ideal." ER22; ER15.

This is wrong. *Nachshin* rejects the idea of a *cy pres* "selection process [that] answer[s] to the whims and self interests of the parties, their counsel, or the court." 663 F.3d at 1039; *see also id.* (citing Liptak, *Doling Out* (criticizing payments to alma maters)); *Bear, Stearns*, 626 F. Supp. 2d at 415 (same); *id.* (criticizing *cy pres* to charity "funded in part by the defendant"). The correct legal standard under Section 3.07 is that a "*cy pres* remedy should not be ordered if the court or any party has any significant prior

affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* § 3.07 *comment (b)*. This settlement flunks that test, as even the district court acknowledged the "potential conflict of interest," but improperly deferred to the parties' self-dealing. ER22.

Because it found a potential conflict of interest, the lower court needed to reject the settlement. "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) (internal quotation omitted). "Cy pres distributions present a particular danger" that "incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of negotiations." *Dennis*, 858 F.3d at 867. This is especially true here where the parties obtained preliminary approval of the settlement by falsely representing the recipients were "independent and free from conflict" (ER145) without disclosing to the court or the class the significant prior affiliations identified in the Frank objection. ER113-ER116. Frank cited *Radcliffe* to the district court, but the district court did not give any reasoned response why it was inapplicable, or even mention *Radcliffe*.

*Lane* does not contend otherwise. The appellants in *Lane* protested that defendant Facebook would have a role in selecting the *cy pres* recipients to avoid harm to Facebook; they did not identify any recipient that presented an actual conflict of interest, but simply speculated that there might be one that acted against class interests in the future despite the charter of the entity that would distribute *cy pres* funds. 696 F.3d at 821-22. *Lane* held that a recipient need not be "ideal," *id.* at 821, but it did not hold that anything goes once the parties make a choice. Moreover, *Lane* has no bearing

on a distribution that raises conflicts between *class counsel* and the recipient. The rationale by which the *Lane* court sanctioned the *cy pres* award—that the terms of the settlement are "the offspring of compromise" that "necessarily reflect the interest of **both** parties"—has no application to a distribution that unjustifiably favors non-party class counsel. 696 F.3d at 821 (emphasis added).[4]

That the parties negotiated a settlement does not mean that they did not negotiate for their own self-interests at the expense of the class; it is the responsibility of the court to investigate for such abuses, because "class action settlements are often quite different from settlements of other types of cases" because of the inherent conflicts of interest between class counsel and the absent class members. *Pearson*, 772 F.3d at 787. Arm's-length negotiations protect the interests of the class only with respect "to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Dry Max Pampers*, 724 F.3d at 717. Thus, a court need not "defer" to the choices in a "freely-negotiated settlement" when they exhibit the conflicts of interest they do here. *Nachshin,* 663 F.3d at 1040. "A proposed *cy pres* distribution must meet these standards regardless of whether the award was fashioned by the settling parties or the trial court." *Id.*

---

[4] This district court is not the only one to misread *Lane*'s "ideal" language this way and approve abusive *cy pres* with known divided loyalties of class counsel. *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1050-53 (S.D. Cal. 2013), *vacated and reversed on other grounds*, 599 Fed. Appx. 274 (9th Cir. 2015). This Court must clarify.

This one does not meet *Nachshin*'s or Section 3.07's standards because of the conflicts of interest. Surely *Lane* does not permit class counsel to direct *cy pres* to a charity run by class counsel's spouse by the mere fact of a negotiated settlement; the conflict of interest would be blatantly self-serving. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014) (Posner, J.). So is the problem of donating to the *alma mater*, which has been repeatedly singled out by courts (including this one) and commentators as the prototypical abuse of *cy pres*. *Nachshin*, 663 F.3d at 1039 (citing Liptak, *Doling Out, supra*; and George Krueger & Judd Serotta, Op-Ed, *Our Class-Action System is Unconstitutional*, WALL ST. J., Aug. 6, 2008 ("Judges … have occasionally been known to order a distribution to some place like their own alma mater …")); *In re Thornburg Mortg., Inc. Sec. Litig.*, 885 F. Supp. 2d 1057, 1108-09 (D.N.M. 2012); *Lane v. Page*, 862 F. Supp. 2d 1182, 1233 (D.N.M. 2012); *Bear, Stearns*, 626 F. Supp. 2d at 415; Chris J. Chasin, *Modernizing Class Action Cy Pres Through Democratic Inputs*, 163 U. PENN. L. REV. 1463, 1473 (2015) ("ethically dubious"); *cf. also Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 n.2 (E.D. Pa. 2005) (noting the appearance of impropriety in selecting a university beneficiary with long established ties to the Eastern District bench); Wasserman, *supra*, 88 U.S.C. L. REV. at 124 & n. 119 (criticizing practice and citing other *alma mater* examples involving judges); *see also In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. LEXIS 77739, at *14-*15 (E.D. Pa. Oct. 3, 2008) (rebuffing proposed *cy pres* awards to institutions with preexisting relationships to class counsel). And this is not the first time that a client of one of the defense firms in this case agreed to a settlement sweetened with *cy pres* for educational institutions affiliated with class counsel. *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist.

LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection to beneficiaries' relationship with class counsel by eliminating *cy pres*); Allison Frankel, *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal*, AMERICAN LAWYER LIT. DAILY, November 30, 2010 (discussing case). As the district court said at the fairness hearing, *cy pres* recipients "shouldn't serve as a substitute… for alumni checks." ER60.

The district court's reasoning that the conflict of interest was acceptable because the alma maters were "not chosen solely by Harvard alumni" (ER22), is fallacious. By that argument, class counsel could direct *cy pres* to a charity run by her husband because not every negotiator is married to him. And the court's reasoning ignores the possibility of log-rolling, where each participant in the negotiations agrees to divvy up the slush fund of *cy pres* money to a favored recipient: say, Google to their regular beneficiaries Stanford and Carnegie-Mellon, class counsel to Harvard and Chicago-Kent. The parties provided no innocent explanation for how Chicago-Kent got into the mix; rather, they cited the since-vacated *EasySaver* for the proposition that a lead class counsel was entitled to direct *cy pres* money to his *alma mater* (Dkt. 75 at 5), effectively conceding that the law school was chosen for the obvious reason that class counsel hoped to double-dip.

The district court thus erred in multiple ways in holding that "there is no indication that counsel's allegiance to a particular alma mater factored into the selection process." *First*, that's not the correct legal standard: a "significant prior affiliation with the intended recipient that would raise substantial questions" is sufficient to block a

recipient under § 3.07, and also implicitly under *Radcliffe*'s requirement that class counsel avoid the appearance of divided loyalties.

*Second*, the district court improperly shifted the burden of proof to the objectors. ER21. But it is the settling parties that are moving for approval of a settlement that will enjoin class members, and it is the settling parties who have the burden of proof; indeed, a pre-certification settlement like this one requires an even "higher level of scrutiny for evidence of … conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval." *Bluetooth*, 654 F.3d at 946-47; *see generally Dry Max Pampers,* 724 F.3d at 719 ("Proponents of class action settlements bear the burden of developing a record demonstrating that the settlement is fair, reasonable and adequate.") (compiling cases and authorities); *ALI Principles* § 3.05(c) ("In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable."); *see also Baby Prods.*, 708 F.3d at 173 (noting *cy pres* settlements require "increased scrutiny"); *Pearson*, 772 F.3d at 786-87 ("judges must be both vigilant and realistic" in review of settlements given the "acute conflicts of interest" they engender). If the burden shifts to objectors rather than requiring settling parties to make the relevant disclosures, then every settlement would be beset by collateral litigation over discovery. Thus, even if the legal rule used by the district court were correct—a conflict is acceptable if the conflict did "not factor into the selection process"—the settling parties failed to meet the burden of production in showing this, as the district court acknowledged at the fairness hearing. ER54-ER55 (criticizing "lack of transparency" in selection process).

*Third*, the parties' "negative pregnant" declarations where they declared the lack of an ongoing relationship with their *alma maters* rather than denying that the institutions were chosen because of the preexisting relationship, and insisting that *EasySaver* permitted this exact conflict of interest (Dkt. 75 at 5) should have led the district court to draw the appropriate adverse inference. Class counsel's indisputable "potential conflict of interest" requires settlement reversal by itself.

The district court entirely failed to provide a "reasoned response" (*Dennis*, 697 F.3d at 864) to Frank's objection to the beneficiaries' pre-existing relationships with Google, other than to say that *Lane* did not require the recipients to be "ideal." ER15. While *Lane* (for better or worse) permits a defendant to take steps to ensure a *cy pres* beneficiary won't act against the defendant's interest, and does not require the beneficiary to be "ideal," nothing in *Lane* obviates *Dennis*'s requirement that *cy pres* donations not be a "paper tiger" sham of "previously budgeted funds." 697 F.3d at 867-68. When the defendant is already a regular contributor to the proposed *cy pres* recipient, there is no demonstrable value added by the defendant's agreement to give money to that institution. *Id.* Google agreed to pay money to institutions that it was in all likelihood going to pay anyway. Such an agreement is of little or no incremental value to the class. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (it is the "*incremental* benefits" that matter, not the "total benefits") (emphasis in original); *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) (rejecting *cy pres* that provided no additional benefit to class members beyond status quo).

Google's "significant prior affiliation with the intended recipient[s] … raise[s] substantial questions" about the merits of the selection process, and is an independent reason to require reversal of the settlement approval. *ALI Principles* § 3.07 *comment (b)*. *Lane* does not hold otherwise, and to the extent the appellees claim otherwise, it conflicts with *Dennis* and should be jettisoned to that extent. The error here is especially compounded because Google waived any opportunity to edify the district court about the full extent of its relationship with the beneficiaries, despite Frank's objection about the lack of disclosure. *Cf. In re Southwest Airlines Voucher Litig.*, No. 13-3264, -- F.3d --, 2014 U.S. App. LEXIS 14601 (7th Cir. Aug. 20, 2015) (requiring disclosure to district court of possible conflicts because "[c]lass members were not obliged, on penalty of waiver, to search on their own for a conflict of interest"). "In the absence of the data, the court did not have before it sufficient facts intelligently to approve the settlement offer." *Dry Max Pampers*, 724 F.3d at 719 (internal quotation and citation omitted).

## IV. Even if the settlement could be legally approved, it is inappropriate to use the 25% benchmark for a *cy pres*-only settlement fund.

The district court decision assumed that the Ninth Circuit's 25% benchmark approach applies equivalently regardless of whether the defendant is obligated by a settlement to pay class members $8.5 million or obligated to pay non-class member third parties $8.5 million. ER18-ER19. This is wrong.

The standard "is not how much money a company spends on purported benefits, but the value of those benefits to the class." *Bluetooth*, 654 F.3d at 944 (internal quotation and citation omitted). As a matter of law, class members are simply "not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should

not be either." *Baby Prods.*, 708 F.3d at 178. When "class counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class," it is "appropriate for the court to decrease the award." *Id.* at 178-79 (citing, *inter alia*, *Dennis*, *Nachshin*, and *ALI Principles* § 3.13); *accord* Wasserman, *supra*, 88 U.S.C. L. REV. at 136-47 (advocating for "presumptive reduction of attorneys' fees" where settlement includes significant *cy pres* component). "The class benefit conferred by cy pres payments is indirect and attenuated. That makes it inappropriate to value cy pres on a dollar-for-dollar basis." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (Rosenthal, J.); *see also Pearson*, 772 F.3d at 781 ("obvious" that no credit should be given for *cy pres* in valuing settlement benefit when calculating fees); *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 19, 22 (D.D.C. 2013) (cutting fee percentage because of "proportion of the award that is going to *cy pres*."); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *111 (C.D. Cal. Nov. 23, 2011) (same "in light of the fact that almost half of the settlement's value is guaranteed not to directly benefit individual class members"); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 123 n.9 (E.D. Pa. 2005) (excluding *cy pres* and non-economic injunctive relief benefits entirely).

The district court's equivalence is bad public policy to boot. If this Court endorses a rule that makes class counsel financially indifferent between a settlement that awards cash directly to class members and a *cy pres*-only settlement, the parties will always prefer the *cy pres* arrangement and unnamed class members will be permanently left out in the cold. Class counsel seeks to maximize its own profit from the class action, while defendants wish to minimize the cost of settlement to themselves. *Pearson*, 772

F.3d at 787; *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) (Posner, J.); *Dry Max Pampers,* 724 F.3d at 717-18. *Cy pres* that crowds out actual class recovery will always be preferable to actual payments to the putative clients in that scenario. Class counsel will prefer a ceremony with an oversized check and prominent members of the community to anonymous small-dollar payments to relatively ungrateful involuntary clients. *E.g.,* Chasin, *supra*, 163 U. PENN. L. REV. at 1484 ("Many law firms tout their cy pres victories as public service," citing example of self-promotional website of law firm with their *cy pres* recipients); Frank Statement at 5; Stanford Center for Internet and Society, *About Us,* http://cyberlaw.stanford.edu/about-us (thanking several plaintiffs' law firms for their *cy pres* without any acknowledgment to class members who waived rights to create those *cy pres* funds) (last accessed September 4, 2015); *cf. also BankAmerica*, 775 F.3d at 1065 ("flatly reject[ing]" *cy pres* distribution predicated on idea that charity is more worthy recipient than unsympathetic class members). Defendants will prefer to make payments to third parties to whom they are already donating money rather than payments to absent class members; donations engender good will, and often merely replace or supplement donations that are already in the pipeline, or which the defendant has a habit of making: in the latter case, then the "relief" to the class is even more illusory, because it merely reflects a shift in accounting entries. Frank Statement at 6. A rule of decision that fails to counter these perverse incentives will result in a disproportionate number of *cy pres*-only settlements.

The percentage-of-recovery benchmark is the prevailing Ninth Circuit methodology because it aligns the incentives of class counsel and the class much better than does the competing lodestar method. *In re Apple Iphone/Ipod Warranty Litig.*,

No. C 10-1610 RS, 2014 U.S. Dist. LEXIS 52050, at *8-*9 (N.D. Cal. Apr. 14, 2014) ("[A]pplying the lodestar to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather, it adds inefficiency to the process.") (internal quotation and ellipsis omitted); *see generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (observing "solid consensus that the contingent approach minimizes conflicts more efficiently than the lodestar"). "Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013). To apply the benchmark equally regardless of whether the class actually recovers funds is to undermine its core benefit and to again misalign the interests of class counsel and its clients.

Put simply, "courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees." *Baby Prods.*, 708 F.3d at 170. It was reversible error for the district court to blindly apply the 25% benchmark to a *cy pres*-only settlement.

## Conclusion

This Court should adopt *ALI Principles* § 3.07, and reverse this settlement approval as a breach of class counsel's fiduciary duty to prioritize class recovery. The preexisting relationships between the *cy pres* recipients, class counsel, and Google, provide an independent *per se* reason to reverse the district court's settlement approval under § 3.07, *Dennis*, *Nachshin*, and *Radcliffe*.

If it is truly the case that any distribution to the class is infeasible, then the class should not have been certified, and the Court should reverse on those grounds.

At a minimum, the attorneys' fees impermissibly treat *cy pres* recovery as equivalent to actual payments to the class, and should be reversed and remanded to value the *cy pres* at a substantial discount to reflect actual class interests.

Dated: September 4, 2015　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　*/s/ Theodore H. Frank*
　　　　　　　　　　　　　　　　　Theodore H. Frank
　　　　　　　　　　　　　　　　　Adam Ezra Schulman
　　　　　　　　　　　　　　　　　CENTER FOR CLASS ACTION FAIRNESS
　　　　　　　　　　　　　　　　　1718 M Street NW, No. 236
　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　Telephone: (703) 203-3848
　　　　　　　　　　　　　　　　　Email: tfrank@gmail.com

　　　　　　　　　　　　　　　　　*Attorneys for Objectors-Appellants*
　　　　　　　　　　　　　　　　　*Theodore H. Frank and Melissa Ann Holyoak*

## Statement of Related Cases
## Under Circuit Rule 28-2.6

*Fraley, et al. v. Facebook, Inc.,* 13-16819; 13-16918; 13-16919; 13-16929; 13-16936;

and 13-17028, scheduled to be argued September 17, 2015, raises the issue of whether

a *cy pres* residual is appropriate when augmented payment to the class is available as an

alternative.


Executed on September 4, 2015.     */s/ Theodore H. Frank*
                                    Theodore H. Frank

**Certificate of Compliance
with Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 12,322 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Garamond font.

Executed on September 4, 2015.

*/s/ Theodore H. Frank*
Theodore H. Frank

**Certificate of Service**

I hereby certify that on September 4, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

/s/ Theodore H. Frank
Theodore H. Frank